[No. D044894. Fourth Dist., Div. One. Sept. 19, 2005.]

CPF AGENCY CORP., Plaintiff and Appellant, v.
SEVEL'S 24 HOUR TOWING SERVICE, Defendant and Respondent.

COUNSEL

Law Office of Sean Brew and Sean Brew for Plaintiff and Appellant.

Bill Lockyer, Attorney General, Tom Greene, Chief Assistant Attorney General, Ronald A. Reiter and Ian K. Sweedler, Deputy Attorneys General, as Amici Curiae on behalf of Plaintiff and Appellant.

Law Offices of Joseph Maiorano, Joseph G. Maiorano and Gerald McCarthy for Defendant and Respondent.

OPINION

**O'ROURKE, J.**—Plaintiff CPF Agency Corp., on behalf of itself and the general public, sued Sevel's 24 Hour Towing Service (defendant), alleging defendant overcharged vehicle owners for vehicle storage fees in violation of Vehicle Code section 22658, subdivision (i)(2)[1] and also failed to comply with section 22851.12, which imposes limitations on a tow operator's right to charge lien sale preparation fees on towed vehicles. The court sustained defendant's demurrers to plaintiff's causes of action for fraud, negligence per se and violations of California's unfair competition law (Bus. & Prof. Code, § 17200 et seq.; hereafter the UCL) on grounds the state regulation was preempted by federal law. On appeal, plaintiff contends the court erred in its ruling because (1) the regulation of storage fees in section 22658 falls within express exceptions to the general preemption provisions of the federal law at issue; and (2) the lien sale preparation fee limitations of section 22851.12 are not related to transportation of property and therefore fall outside of the federal law's general preemption provision, or alternatively fall within the same express exceptions to preemption. The Attorney General has submitted an amicus curiae brief in support of plaintiff's position.

 Because we conclude the state regulations at issue are not preempted by federal law, we reverse the judgment and remand the matter with directions that the court enter a new order overruling defendant's demurrer.

## FACTUAL AND PROCEDURAL BACKGROUND

We base our factual recitation on the properly pleaded material factual allegations of plaintiff's first amended complaint, which is the operative pleading in this matter, and any matters of which we may properly take judicial notice. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr.

---

[1] All statutory references are to the Vehicle Code unless otherwise indicated.

718, 703 P.2d 58]; *Crowley v. Katleman* (1994) 8 Cal.4th 666, 672 [34 Cal.Rptr.2d 386, 881 P.2d 1083].)

Defendant is in the business of towing, impounding and storing vehicles. On June 17, 2002, defendant towed a vehicle owned by plaintiff and operated by one of its employees, Joel Fitzgerald, from private property located at 2918 B Street in San Diego. Defendant impounded the vehicle and placed it in one of its storage facilities shortly after 4:30 p.m. About 11:30 a.m. the next day, Fitzgerald arrived at defendant's business location to retrieve the vehicle and was presented with an invoice for $126, representing a towing fee of $88 and a storage fee of $38 for two days of storage (billed at $19 per day). After questioning the storage fees on the invoice, Fitzgerald was told it was defendant's company policy to charge $19 for each calendar day the vehicle was in storage.

Plaintiff sued defendant for fraud (first cause of action), negligence per se (second cause of action), and violations of the UCL (third and fourth causes of action). In its third cause of action, plaintiff alleged defendant "systematically, routinely, and knowingly failed to comply with the requirements of California Vehicle Code [s]ection 22658[, subdivision] (i)(2) when charging its excessive storage fees," thereby engaging in unfair business practices and unfair competition. In its fourth cause of action, plaintiff alleged defendant committed unfair and illegal practices in instances where a vehicle was not redeemed before 72 hours from the time of its initial storage, by improperly charging vehicle owners fees for lien sale preparations without first requesting certain information from the California Department of Motor Vehicles (DMV). Plaintiff sought restitution and disgorgement of improperly obtained fees, as well as injunctive relief.

Defendant demurred to plaintiff's first amended complaint. It argued plaintiff failed to state facts sufficient to state causes of action, and further, the court lacked subject matter jurisdiction. As to the first, second and third causes of action, defendant argued the court lacked subject matter jurisdiction because the statute on which these claims were based, section 22658, subdivision (i)(2), limiting storage fees that may be charged by towing services, was preempted by the Federal Aviation Administration Authorization Act of 1994 (the FAAAA), title 49 United States Code section 14501 et seq.[2] As to the fourth cause of action, defendant argued section

---

[2] Defendant raised the preemption issue somewhat indirectly as to its fraud cause of action. Specifically, defendant argued plaintiff could not state a cause of action for fraud because there was no "valid" statute prohibiting a towing company from charging two days storage fees within a 24-hour period. Defendant additionally argued plaintiff could not allege justifiable reliance because plaintiff was operating a "sting" operation and therefore was aware of the wrongfulness of defendant's statements about the propriety of its charges.

22851.12 was preempted by the FAAAA, and additionally that plaintiff had no standing because it was not charged lien sale preparation fees. Finally defendant argued, in view of the preemption by federal law, the first amended complaint lacked the legal and factual support for a permanent injunction.

The court sustained defendant's demurrers to plaintiff's first, second and third causes of action without leave to amend. It ruled the FAAAA preempted section 22658, subdivision (i)(2) because the section relates to the price, route or service of a motor carrier, and it did not fall within certain exceptions to preemption in the FAAAA. It further found, for purposes of plaintiff's third cause of action, that defendant's practice in charging for storage per calendar day was not unfair within the meaning of the UCL. The court overruled defendant's demurrer to plaintiff's fourth cause of action; although the court found section 22851.12 preempted by the FAAAA, it concluded the practice of charging for lien sale preparation fees without first incurring any expense in connection with lien sales was unfair within the meaning of the UCL. Based on the latter ruling, the court overruled defendant's demurrer to plaintiff's claim for injunctive relief. Plaintiff dismissed its remaining cause of action, and thereafter entered into a stipulated judgment and order of dismissal of the entire first amended complaint, which was entered by the trial court in July 2004. This appeal followed.

## DISCUSSION

### I. *Standard of Review*

■ On appeal from a judgment after a demurrer is sustained without leave to amend, we review the trial court's ruling de novo, exercising our independent judgment on whether the complaint states a cause of action. (*Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1501 [82 Cal.Rptr.2d 368].) " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan, supra,* 39 Cal.3d at p. 318; accord, *Rangel v. Interinsurance Exchange* (1992) 4 Cal.4th 1, 7 [14 Cal.Rptr.2d 783, 842 P.2d 82].)

## II. *Preemption*

We decide here whether certain provisions regulating towing companies set out in sections 22658 and 22851.12 are preempted by the FAAAA. The issue presented is one of law that we address de novo. (*People ex rel. Renne v. Servantes* (2001) 86 Cal.App.4th 1081, 1087 [103 Cal.Rptr.2d 870] (*Servantes*).)

### A. *Principles of Federal Preemption*

■ "Article VI of the Constitution provides that the laws of the United States 'shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any state to the Contrary notwithstanding.' " (*Cipollone v. Liggett Group, Inc.* (1992) 505 U.S. 504, 516 [120 L.Ed.2d 407, 112 S.Ct. 2608].) Under the supremacy clause, state law that conflicts with federal law is " 'without effect.' " (*Cipollone, supra*, at p. 516, quoting *Maryland v. Louisiana* (1981) 451 U.S. 725, 746 [68 L.Ed.2d 576, 101 S.Ct. 2114].) "Consideration of issues arising under the supremacy clause 'start[s] with the assumption that the historic police powers of the States [are] not to be superseded by . . . Federal Act unless that [is] the clear and manifest purpose of Congress. ' [Citation.] Accordingly, ' "[t]he purpose of Congress is the ultimate touchstone" ' of pre-emption analysis," and its intent may be express in the federal statute's language or implicit in the statute's structure and purpose. (*Cipollone, supra*, 505 U.S. at p. 516.) Absent an express congressional command, state law is preempted if it actually conflicts with federal law, or if federal law so thoroughly occupies a legislative field " ' "as to make reasonable the inference that Congress left no room for the States to supplement it." ' " (*Ibid.*)

■ "When . . . Congress considers the issue of preemption and adopts a preemption [provision in a] statute that provides a reliable indication of its intent regarding preemption, the scope of federal preemption is determined by the preemption [provision] and not by the substantive provisions of the legislation. [Citation.] The reason is that 'Congress' enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted.' " (*Lindsey v. Tacoma-Pierce County Health Dept.* (9th Cir. 1999) 195 F.3d 1065, 1069, citing *Cipollone v. Liggett Group, Inc., supra*, 505 U.S. at p. 517.)

### B. *The Interstate Commerce Act and FAAAA*

■ "The Interstate Commerce Act, as amended by the [FAAAA], and the ICC Termination Act of 1995 . . . generally preempts state and local regulation 'related to a price, route, or service of any motor carrier . . . with

respect to the transportation of property.' " (*Columbus v. Ours Garage & Wrecker Service Inc.* (2002) 536 U.S. 424, 429 [153 L.Ed.2d 430, 122 S.Ct. 2226] (*City of Columbus*).) Specifically, the FAAAA provides: "(1) General Rule.—Except as provided in paragraphs (2) and (3), a State [or] political subdivision of a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . with respect to the transportation of property." (49 U.S.C. § 14501(c)(1).) ■ The phrase "related to" in this general preemption provision is "interpreted quite broadly." (*Independent Towers, WA. v. State, Washington* (9th Cir. 2003) 350 F.3d 925, 930 (*Independent Towers*).) Thus, " '[a] state or local regulation is related to the price, route, or service of a motor carrier if the regulation has more than an indirect, remote, or tenuous effect on the motor carrier's prices, routes, or services.' " (*Ibid.,* quoting *Tocher v. City of Santa Ana* (9th Cir. 2000) 219 F.3d 1040, 1047, overruled in part on other grounds by *City of Columbus, supra,* 536 U.S. 424 and by *Tillison v. City of San Diego* (9th Cir. 2005) 406 F.3d 1126, 1127.)

■ The FAAAA contains four express exceptions to this general preemption provision (49 U.S.C. § 14501(c)(2); *City of Columbus, supra,* 536 U.S. at p. 429), only two of which are applicable here. The FAAAA provides that its general preemption rule "shall not restrict the safety regulatory authority of a State with respect to motor vehicles." (49 U.S.C. § 14501(c)(2)(A); hereafter the safety exception.) It further provides that its general preemption rule "does not apply to the authority of a State . . . to enact or enforce a law, regulation, or other provision relating to the price of for-hire motor vehicle transportation by a tow truck, if such transportation is performed without the prior written consent or authorization of the owner or operator of the motor vehicle." (49 U.S.C. § 14501(c)(2)(C); hereafter the nonconsensual towing exception.)

C. *Section 22658, subdivision (i)(2)*

■ Section 22658, subdivision (i) pertains to towing and storage fees. It provides in part: "(1) A charge for towing or storage, or both, of a vehicle under this section is excessive if the charge is greater than that which would have been charged for towing or storage, or both, made at the request of a law enforcement agency under an agreement between the law enforcement agency and a towing company in the city or county in which is located the private property from which the vehicle was, or was attempted to be, removed. [¶] (2) If a vehicle is released within 24 hours from the time the vehicle is brought into the storage facility, regardless of the calendar date, the storage charge shall be for only one day. Not more than one day's storage charge may be required for any vehicle released the same day that it is

stored." Under section 22658's regulatory scheme, a person who charges excessive towing or storage charges is liable to the vehicle owner for four times the amount charged. (§ 22658, subd. (j).)

Plaintiff concedes that a towing company such as defendant is a "motor carrier of property" falling within 49 United States Code section 14501(c)'s ambit,[3] and it does not challenge the notion that section 22658, subdivision (i)(2) falls within the FAAAA's general preemption of state and local regulation of towing prices, routes, and services. Rather, it maintains the storage fee limitation of section 22658, subdivision (i)(2) falls within both the FAAAA's safety and nonconsensual towing exceptions and thus the statute is entitled to be enforced according to its terms without FAAAA preemption.

As we explain, we reject plaintiff's contention that section 22658, subdivision (i)(2) falls within the safety exception, but agree it is saved from preemption under the nonconsensual towing exception.

1. *The Safety Exception (49 U.S.C. § 14501(c)(2)(A))*

In *Servantes, supra,* 86 Cal.App.4th 1081, the First Appellate District, Division Five of the Court of Appeal addressed the FAAAA's preemption over section 22658's regulatory scheme for removal of vehicles from private property by towing services and concluded certain regulations fell within the FAAAA's safety exception. (*Servantes,* at pp. 1092, 1095.) There, the defendant was found in the lower court to have committed hundreds of violations of state and local laws by his towing practices, including by imposing excessive towing and storage fees under section 22658, subdivision (i). (*Servantes,* at pp. 1083–1084.) The defendant's principal defense at trial and on appeal was that the regulations governing towing operations were preempted by federal law. (*Id.* at p. 1087.)

The Court of Appeal observed there was little question that a towing company qualifies as a "motor carrier" under the FAAAA, and, citing federal authorities in accord, that Congress's intention to preempt state and local regulation of towing services generally was evidenced by its limited exception for nonconsensual towing services, as it would otherwise have had no need to include such an exception. (*Servantes, supra,* 86 Cal.App.4th at p. 1088, citing *R. Mayer of Atlanta, Inc. v. City of Atlanta* (11th Cir. 1998) 158 F.3d 538, 543, revd. on other grounds in *City of Columbus, supra,* 536 U.S. 424; *Ace Auto Body & Towing, Ltd. v. City of New York* (2d Cir. 1999) 171 F.3d 765, 771; *Hott v. City of San Jose* (N.D.Cal. 2000) 92 F.Supp.2d 996; *Harris Cty. Wrecker Owners v. City of Houston* (S.D.Tex. 1996) 943 F.Supp. 711, 720–724.)

---

[3] A "motor carrier" is broadly defined as "a person providing motor vehicle transportation for compensation." (49 U.S.C. § 13102(12); see *Servantes, supra,* 86 Cal.App.4th at p. 1088.)

However, relying in part on a decision by another division of its court, *Berry v. Hannigan* (1992) 7 Cal.App.4th 587 [9 Cal.Rptr.2d 213], *Servantes* found "the protections Vehicle Code section 22658 offers to the owner of a vehicle" had a public safety purpose and thus fell within the safety exception of the FAAAA. (*Servantes, supra,* 86 Cal.App.4th at pp. 1090, fn. 10, 1092.) In upholding the constitutionality of the provision requiring towing operators to accept credit cards (§ 22658, subd. (k)), *Berry* had reasoned: " ' "It cannot be doubted that the unexpected loss of the use of one's vehicle directly affects the safety and welfare of vehicle operators and owners. A person may be stranded hundreds of miles from home with no alternative mode of return travel and with no place to stay until the vehicle can be recovered. . . . Legislation which tends to assist members of the public from involuntarily losing the use of their vehicles and which tends to expedite recovery of their vehicles once they have been removed fairly and clearly promotes the safety and welfare of the public." ' " (*Servantes,* at p. 1091, quoting *Berry,* at p. 591.) The *Servantes* court adopted similar reasoning to apply the FAAAA's safety exception to its facts, pointing out that storage facilities for towed cars are unlikely to be located in densely populated, highly lighted locations, but rather in areas that "might be described as desolate, especially at night when so much of the retrieval of towed cars takes place." (*Servantes,* at p. 1091.) The court observed the vehicle owner in that case had been stranded on a Saturday evening, spent 45 minutes trying to hail a taxi and then spent all of his money on the cab while waiting for the tow company representative, traveled to another location to make a pay phone call, and eventually had to be taken by the defendant to a teller machine to pay the $140 fee in cash. (*Id.* at pp. 1091–1092.)

In reaching its conclusion, the *Servantes* court disagreed with a decision of the Ninth Circuit Court of Appeals, *Tocher v. City of Santa Ana, supra,* 219 F.3d 1040 (*Tocher*), which held certain provisions of section 22658, including subdivisions (k) and (*l*) (pertaining to written authorization by the property owner to tow the vehicle) did not fall within the FAAAA's safety exception because they were " 'based on consumer protection rather than safety. . . .' " (*Servantes, supra,* 86 Cal.App.4th at p. 1090, citing *Tocher,* at pp. 1044, 1052.) The *Servantes* court reasoned: "As noted, Vehicle Code section 22658 requires the owner of private property to notify the police before causing a vehicle to be towed and requires the towing company to obtain the written authorization of the property owner ([§ 22658,] subds. (a) & (*l*)); it also requires that the storage facility accept a credit card for payment of the towing and storage charges ([§ 22658,] subd. (k)). In our view, this statute offers far more than economic protection to the consumer. By ensuring that removal occurs only upon proper authorization, the statute obviously serves to protect vehicle owners and the public at large from both towing mistakes and outright theft of vehicles from private property. And by the requirement

that the tow operator accept credit cards, the statute expedites recovery of the involuntarily towed vehicle. Thus, we disagree with *Tocher* that Vehicle Code section 22658 is merely a consumer protection statute . . . ." (*Servantes*, at p. 1090.)

■ After *Servantes* was decided, the United States Supreme Court in *City of Columbus* addressed the FAAAA's safety exception on the question of whether it could save local regulations from preemption. (*City of Columbus*, *supra*, 536 U.S. 424 at pp. 428–429.) In holding that the exception did apply to municipalities, the court declined to accept a narrow construction of the federal statute. (*Id.* at p. 441.) It reiterated that the safety exception "shields from preemption only 'safety regulatory authority.. . .' " (*Id.* at p. 442.) Thus, "[l]ocal regulation of prices, routes, or services of tow trucks that is not genuinely responsive to safety concerns garners no exemption from [49 United States Code section] 14501(c)(1)'s preemption rule." (*City of Columbus*, at p. 442.) *City of Columbus* disapproved several circuit court of appeals decisions, including *Tocher*, *supra*, 219 F.3d at page 1051, which had held municipal safety and insurance regulations were not encompassed within the FAAAA's safety exception, and were therefore preempted. (See *City of Columbus*, *supra*, 536 U.S. at p. 431 [noting split among courts of appeals on the issue].)

The Ninth Circuit has since reconsidered *Tocher* and further abrogated that decision, at least as to subdivision (*l*) of section 22658, based in part on the high court's construction of the safety exception in *City of Columbus*. In *Tillison v. City of San Diego*, *supra*, 406 F.3d at p. 1131 (*Tillison*), the court concluded subdivision (*l*) of section 22658 was indeed safety related and thus not preempted by the FAAAA. *Tillison* noted the dearth of case law discussing the limits of the safety exception, but took guidance from *City of Columbus*'s focus on whether the Legislature's purpose and intent was truly to promote public safety. (*Tillison*, at p. 1129, citing *City of Columbus*, *supra*, 536 U.S. at p. 442.) *Tillison* found an authoritative expression of the Legislature's intent in an August 2003 amendment to section 22658, in which the Legislature provided that in adopting subdivision (*l*) of section 22658, its intent was to "further the safety of the general public by ensuring that a private property owner or lessee has provided his or her authorization for the removal of a vehicle from his or her property, thereby promoting the safety of those persons involved in ordering the removal of the vehicle as well as those persons removing, towing, and storing the vehicle." (§ 22658, subd. (m)(2).) While not dispositive, the Legislature's express delineation of its safety purpose was relevant to the *Tillison* court's inquiry. (*Tillison*, *supra*, 406 F.3d

at p. 1130.) The court also found helpful to its analysis *Servantes, supra,* 86 Cal.App.4th 1081, *Berry v. Hannigan, supra,* 7 Cal.App.4th 587, and other circuit court authority addressing the safety exception. (*Tillison,* at p. 1130, citing *Galactic Towing, Inc. v. City of Miami Beach* (11th Cir. 2003) 341 F.3d 1249, 1253; *Cole v. City of Dallas* (5th Cir. 2002) 314 F.3d 730; *Ace Auto Body & Towing, Ltd. v. City of New York, supra,* 171 F.3d 765; *Tow Operators v. City of Kansas City, Mo.* (8th Cir. 2003) 338 F.3d 873, 876.) The Ninth Circuit adopted the reasoning of the Florida district court in *Galactic Towing* involving a Miami Beach ordinance similar to subdivision (*l*) of section 22658; that court held the ordinance was safety related because " 'the ordinance protects both the vehicle owner and the public from towing mistakes, which may lead to dangerous confrontations, to the owner and his or her family being stranded at a dangerous time and location, to false vehicle theft reports, which waste law enforcement's limited resources, to unnecessary hazardous tows and to similarly unsafe circumstances. The ordinance also protects against theft of vehicles from private property.' " (*Tillison, supra,* 406 F.3d at pp. 1130–1131.)

*City of Columbus* guides us in analyzing whether the Legislature intended section 22658 to serve or further a public safety purpose. Unlike the *Tillison* court, we are without an express statement of legislative intent as to whether section 22658, subdivision (i) was enacted to promote a public safety or welfare purpose. As *Tillison* noted, in 2003 the California Legislature amended section 22658 to evince its intent that subdivisions (k) and (*l*) were adopted to promote the safety and welfare of the general public. (§ 22658, subd. (m), added by Stats. 2003, ch. 212, § 1.[4] The Legislature did not include subdivision (i) of section 22658 in that amendment. These provisions compel us to ask whether the Legislature, when it set forth an express statement of intent as to two subdivisions of section 22658, necessarily indicated that it had no such intent as to the remaining subdivisions. As we explain, we answer that question in the affirmative.

 To ascertain legislative intent, we apply settled rules of statutory construction. We begin with the words of the statute, since ordinarily they provide the most reliable indication of legislative intent. (*People v. Jefferson*

---

[4] Section 22658, subdivision (m) provides: "(1) It is the intent of the Legislature in the adoption of subdivision (k) to assist vehicle owners or their agents by, among other things, allowing payment by credit cards for towing and storage services, thereby expediting the recovery of towed vehicles and concurrently promoting the safety and welfare of the public. [¶] (2) It is the intent of the Legislature in the adoption of subdivision (*l*) to further the safety of the general public by ensuring that a private property owner or lessee has provided his or her authorization for the removal of a vehicle from his or her property, thereby promoting the safety of those persons involved in ordering the removal of the vehicle as well as those persons removing, towing, and storing the vehicle."

(1999) 21 Cal.4th 86, 94 [86 Cal.Rptr.2d 893, 980 P.2d 441].) "[I]f the statutory language permits more than one reasonable interpretation, courts may consider various extrinsic aids, including the purpose of the statute, the evils to be remedied, the legislative history, public policy, and the statutory scheme encompassing the statute. [Citation.] In the end, we ' "must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." ' " (*Torres v. Parkhouse Tire Service, Inc.* (2001) 26 Cal.4th 995, 1003 [111 Cal.Rptr.2d 564, 30 P.3d 57]; see also *Nolan v. City of Anaheim* (2004) 33 Cal.4th 335, 340 [14 Cal.Rptr.3d 857, 92 P.3d 350].)

■ Here, the language of section 22658 is subject to the maxim *expressio unius est exclusio alterius*: "The expression of some things in a statute necessarily means the exclusion of other things not expressed." (*Gikas v. Zolin* (1993) 6 Cal.4th 841, 852 [25 Cal.Rptr.2d 500, 863 P.2d 745].) Stated another way, "[i]f a statute enumerates the persons or things to be affected by its provisions, there is an implied exclusion of others . . . . It is an elementary rule of construction that the expression of one excludes the other. And it is equally well settled that the court is without power to supply an omission." (*Estate of Pardue* (1937) 22 Cal.App.2d 178, 180–181 [70 P.2d 678].) This rule of statutory construction is applicable unless a contrary legislative intent is expressed in the statute or elsewhere. (*Fields v. Eu* (1976) 18 Cal.3d 322, 332 [134 Cal.Rptr. 367, 556 P.2d 729].)

■ Applying this maxim, we conclude that when the Legislature amended section 22658 to articulate its express intent to further public safety purposes by enacting subdivisions (*l*) and (k), but did not do so with respect to subdivision (i), it made an implicit legislative determination that the remaining provisions of section 22658, including the storage fee limitation in subdivision (i), were not enacted in response to public safety concerns. ■ "Courts should generally 'assume that the Legislature knew what it was saying and meant what it said.' [Citation.] . . . And this is particularly true where the Legislature has omitted a provision which it has employed in other circumstances where the asserted effect is intended." (*Digital Biometrics, Inc. v. Anthony* (1993) 13 Cal.App.4th 1145, 1160–1161 [17 Cal.Rptr.2d 43].)

We find no contrary legislative intent elsewhere. Indeed, the legislative history of this amendment supports our conclusion. In adding subdivision (m) of section 22658, the Legislature considered the recommendations of a

legislative advisory committee that had conducted a review of "all relevant laws affecting tow trucks" and advised the Legislature to insert a statement of intent only as to subdivisions (k) and (*l*) of section 22658.[5] (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 792 (2003–2004 Reg. Sess.), as introduced Feb. 20, 2003, p. 3 [analysis issued July 22, 2003].) "One of [the Tow Truck Advisory Committee's] recommendations included adopting a 'statement of legislative purpose' which would declare the safety purpose of current law requiring the acceptance of bank credit cards and written authorization prior to towing a vehicle." (Assem. Com. on Transportation, Rep. on Assem. Bill No. 792 (2003–2004 Reg. Sess.), as introduced Feb. 20, 2003, p. 2 [analysis issued Apr. 28, 2003].) Noting the split between the *Tocher* and *Servantes* courts, the Tow Truck Advisory Committee had concluded "that a 'statement of legislative intent could establish guidelines and resolve the confusion created by conflicting court decisions.' " (Assem. Com. on Transportation, Rep. on Assem. Bill No. 792 (2003–2004 Reg. Sess.), as introduced Feb. 20, 2003, p. 2 [analysis issued Apr. 28, 2003].) According to the Assembly Committee on Transportation's report, the Legislature sought to "codify this statement of legislative intent by clarifying that both [subdivision (k) and (*l*) of section 22658] offer a safety benefit to the public and the towing industry." (Assem. Com. on Transportation, Rep. on Assem. Bill No. 792 (2003–2004 Reg. Sess.), as introduced Feb. 20, 2003, p. 2 [analysis issued Apr. 28, 2003].)

The legislative history shows that in 2003, the Legislature had before it a review of all relevant towing regulations as well as a discussion of the need to protect the safety-related authority of the State of California from preemption by federal law, but when presented with the opportunity to clarify which provisions of section 22658 were designed to further a public safety purpose, it did not include subdivision (i) within that statement of intent. Under the circumstances, we cannot say the Legislature considered subdivision (i) of section 22658 "genuinely responsive to [public] safety concerns" (*City of Columbus, supra,* 536 U.S. at p. 442) so as to fall within the safety exception of the FAAAA.

In reaching this conclusion, we disagree with *Servantes* to the extent it may suggest that all of section 22658's subdivisions fall within the ambit of the FAAAA's safety exception. (*Servantes, supra,* 86 Cal.App.4th at p. 1092

---

[5] This committee, the Tow Truck Advisory Committee, created by Senate Bill No. 46 (2001–2002 Reg. Sess.) and chaptered in Statutes 2001, chapter 127, was established in part to " 'review all relevant laws affecting tow trucks with a goal of improving tow truck safety' and 'develop proposed statewide tow truck industry standards, including, but not limited to, all of the following: (1) training; (2) criminal history disqualification; (3) appeal processes; and (4) minimum safe gross weight ratings for tow trucks.' " (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 792 (2003–2004 Reg. Sess.), as introduced Feb. 20, 2003, p. 3. [analysis issued July 22, 2003].)

[finding a public safety purpose in the "protections . . . section 22658 offers to the owner of a vehicle"].) While *Servantes* mentioned subdivision (i) of section 22658 in its overview of the regulatory scheme ( *Servantes*, at p. 1084), it did not explain whether or how that particular provision furthers a safety purpose. Further, *Servantes* was decided before the Legislature's addition of subdivision (m) of section 22658, which carved out subdivisions (k) and (*l*) in its statement of legislative intent. Like the Ninth Circuit did in *Tillison*, *supra*, 406 F.3d 1126, we find it appropriate to analyze each provision independently in our preemption analysis.

### 2. *The Nonconsensual Towing Exception (49 U.S.C. § 14501(c)(2)(C))*

 Although the storage fee regulation of section 22658, subdivision (i)(2) does not fall within the FAAAA's safety exception, we conclude it does fall within the nonconsensual towing exception of 49 United States Code section 14501(c)(2)(C). That exception, as stated *ante*, permits the state to enact laws or regulations "relating to the price of for-hire motor vehicle transportation by a tow truck, if such transportation is performed without the prior written consent or authorization of the owner or operator of the motor vehicle." The term "transportation" is defined in the FAAAA as including "(A) a motor vehicle . . . or equipment of any kind related to the movement of passengers or property, or both . . . ; and [¶] (B) services related to that movement, including . . . *storage*, handling, packing, unpacking, and interchange of passengers and property." (49 U.S.C. § 13102(21)(A), (B), italics added; see also *Independent Towers*, *supra*, 350 F.3d at p. 931, fn. 4; *Ace Auto Body & Towing, Ltd. v. City of New York*, *supra*, 171 F.3d at p. 771.)

Relying on the Ninth Circuit's decision in *Independent Towers*, *supra*, 350 F.3d 925, as well as *Berry v. Hannigan*, *supra*, 7 Cal.App.4th 587, plaintiff argues the storage fee limitation of section 22658, subdivision (i) should easily be found to relate to the price of nonconsensual tows, because the obvious purpose of the entire regulatory scheme of section 22658 is to set out rules that apply when a property owner, as opposed to the vehicle owner, requests that a vehicle be towed. Plaintiff points to the fact the towing regulations at issue are contained within chapter 10 of division 11 of the Vehicle Code, pertaining to "Removal of Parked and Abandoned Vehicles," thus assertedly showing that all of the regulations are "devoted to regulating the methods and prices that apply to various situations which call for 'vehicle transportation by a tow truck . . . without the prior consent or authorization of the owner . . . .' " Plaintiff further maintains the trial court's ruling ignores the definition of "transportation" intended to apply to the FAAAA as including storage services.

Viewing it in context of the entire scheme, we agree that section 22658, subdivision (i)(2) is a regulation relating to the price of tow truck "transportation," as that term is broadly defined in the FAAAA, performed without the vehicle owner's prior written consent or authorization. The statutory definition of the FAAAA explicitly broadens "transportation" to include storage related to the movement of property (49 U.S.C. § 13102(21)(B)), which has been held to encompass tow truck storage facilities. (*Ace Auto Body & Towing, Ltd. v. City of New York, supra,* 171 F.3d at p. 771.) Further, the regulatory scheme set out in section 22658 in general is plainly directed at regulating nonconsensual tows. It requires the person causing removal of the vehicle to provide notice in writing to the registered or legal owner of the vehicle of the "fact of the removal, the grounds for the removal, and . . . the place to which the vehicle has been removed." (§ 22658, subd. (b).) As the court in *Servantes* explained, the scheme set forth in section 22658 further requires the private property owner to notify the police before causing a vehicle to be towed and the towing company to obtain the written authorization of the property owner (§ 22658, subds. (a), (*l*)), and it obligates the storage facility to accept a credit card for payment of the towing and storage charges (§ 22658, subd. (k)), thus "expedit[ing] recovery of the involuntarily towed vehicle." (*Servantes, supra,* 86 Cal.App.4th at p. 1090; see also *Berry v. Hannigan, supra,* 7 Cal.App.4th at p. 591 [declining to distinguish towing services from other service providers because the towing services "are not sought, or consented to, by the vehicle owner" and noting such owner "is in no position to decline the tower's services, or select another tower, or negotiate the manner or amount of payment"].) The regulations overall set out protections for vehicle owners who have had their vehicles moved without their consent or authorization. Like the court in *Independent Towers,* we have little doubt the storage fee regulation that is a part of this scheme relates to nonconsensual tows.

Defendant urges us to reject application of the nonconsensual towing exception on the ground the exception is narrowly drafted; it argues the exception, unlike the FAAAA's general preemption provision, does not refer to "routes" or "services," and thus it is limited to just the price charged for *actual transportation* of the vehicle. Relying on *R. Mayer of Atlanta, Inc., supra,* 158 F.3d 538 (*Mayer*) (abrogated in part by *City of Columbus, supra,* 536 U.S. 424), he maintains Congress intended the exception to be limited to permitting state and local governments to set a maximum price for nonconsensual tows only, not any other aspect of tow truck operations such as storage. He further argues the trial court correctly concluded that inclusion of the word "storage" in 49 United States Code section 13102(21)(B) refers only to that storage occurring during the actual movement of the vehicle, i.e., while the vehicle is on the tow truck during transport.

We reject these contentions. At issue in *Mayer* was whether the FAAAA expressly preempted municipal ordinances regulating the provision of consensual towing services. (*Mayer, supra,* 158 F.3d at pp. 540, 542.) It was in that context that the court set out legislative history showing Congress intended to preempt state or local ordinances regulating the provision of consensual intrastate towing services, in view of the express exception including only regulations addressing the prices of nonconsensual towing. (*Id.* at. p. 544.) Citing to a house report accompanying the proposed version of the nonconsensual towing exception, the *Mayer* court said: "Congress thus limited the exception to include only those regulations that address the prices of nonconsensual towing, while leaving undisturbed the preemptive effect of the statute as it pertains to all other aspects of the towing industry. As noted prior to the amendment's passage, '[t]he pending legislation would restore the local authority to engage in regulating the prices charged by tow trucks in non-consensual towing situations. Regulation of routes and services, *as well as regulation of consensual towing,* would still be preempted.' " (*Mayer,* 158 F.3d at p. 544.) The *Mayer* court did not address the definition of "transportation" contained in 49 United States Code section 13102(21)(B), or the scope of the exception as it may or may not relate to storage of vehicles. *Mayer* is not persuasive authority on the question presented on this appeal.

■ Nor are we willing to conclude that the reference to "storage" in 49 United States Code section 13102(21)(B)'s definition of transportation is limited to storage while a vehicle is in transit upon a tow truck. The definition is broad and open-ended—providing for "services related to [the] movement" of property—and in our view, storage of a towed vehicle at a storage yard after its transport is a service incident or related to the carriage. (Accord, *PNH Corp. v. Hullquist Corp.* (1st Cir. 1988) 843 F.2d 586, 590 [holding a defendant that had stored goods bound for delivery but never actually transported those goods would have provided "transportation" within the meaning of 49 U.S.C. section 13102 if it had been a motor carrier; court stated the broad definition of transportation in the statute includes all "services incident to carriage and delivery"].)

D. *Section 22851.12*

■ Section 22851 and its subdivisions generally govern the rights and responsibilities of a garage keeper or other person in asserting a possessory lien for "compensation for tow[ing] and . . . caring for and keeping safe" a vehicle that has been removed to a storage facility. (See § 22851, subd. (a)(1)[6]; *People v. James* (1981) 122 Cal.App.3d 25, 37–38 [177

---

[6] Section 22851, subdivision (a)(1) provides in part: "Whenever a vehicle has been removed to a garage under this chapter and the keeper of the garage has received the notice or notices as provided herein, the keeper shall have a lien dependent upon possession for his or her

Cal.Rptr. 110].) Section 22851.12, at issue here, authorizes a keeper to charge a "lien sale preparation fee" under certain conditions and limits as to amount and timing. It provides: "The lienholder may charge a fee for lien-sale preparations not to exceed seventy dollars ($70) in the case of a vehicle having a value determined to be four thousand dollars ($4,000) or less and not to exceed one hundred dollars ($100) in the case of a vehicle having a value determined to be greater than four thousand dollars ($4,000), from any person who redeems the vehicle prior to disposal or is sold through a lien sale pursuant to this chapter. These charges may commence and become part of the possessory lien when the lienholder requests the names and addresses of all persons having an interest in the vehicle from the [DMV]. Not more than 50 percent of the allowable fee may be charged until the lien sale notifications are mailed to all interested parties and the lienholder or the registration service agent has possession of the required lien processing documents. This charge shall not be made in the case of any vehicle redeemed prior to 72 hours from the initial storage." (§ 22851.12.)

Plaintiff contends section 22851.12 does not come within the ambit of the FAAAA's general preemption provision; that while the statute regulates a "price," the price it regulates is not "with respect to the transportation of property" within the meaning of the FAAAA. It maintains the provision essentially involves debt collection efforts and notices that are not related to "transportation" as the FAAAA defines that term. Alternatively, plaintiff contends if the lien sale preparation fee regulations are related to transportation, the law falls within the purview of both the safety and nonconsensual towing exceptions. Defendant, on the other hand, contends the FAAAA generally preempts the regulation because the lien to which the lien sale preparation fees apply is specifically for the recovery of towing and storage charges, and therefore the regulations relate to both a price and a service. Defendant further contends section 22851.12 does not fall within the safety exception because its condition for charging lien sale preparation fees—requesting a list of lienholders from the DMV—is purely economic protection for consumers. Defendant finally argues the nonconsensual towing exception does not apply because the lien sale is not "transportation" within the meaning of the FAAAA, and lien sale preparation fees are not a "price" charged for transportation.

---

compensation for towage and for caring for and keeping safe the vehicle for a period not exceeding 60 days, or, if an application for an authorization to conduct a lien sale has been filed pursuant to Section 3068.1 of the Civil Code within 30 days after the removal of the vehicle to the garage, 120 days and, if the vehicle is not removed by the owner within that period or the owner is unknown, the keeper of the garage may satisfy his or her lien in the manner prescribed in this article." This provision, and section 22851.12, are contained in division 11 of the Vehicle Code, under chapter 10 (Removal of Parked and Abandoned Vehicles) and article 2 (Vehicle Disposition).

As stated, state and local laws are only preempted under the FAAAA where they " 'relate[] to a price, route, or service' of a motor carrier" with respect to the transportation of property. (*Independent Towers, supra,* 350 F.3d at p. 930.) The question is whether the lien sale preparation fee regulations contained in section 22851.12 have more than an "indirect, remote, or tenuous effect" on any of these matters. (*Independent Towers, supra,* 350 F.3d at p. 930; see also *Californians for Safe Dump Truck Transp. v. Mendonca* (9th Cir. 1998) 152 F.3d 1184, 1189 (*Mendonca*).) As we read section 22851.12, it is apparent that the lien sale preparation fee is a charge that may be added to the possessory lien under specified conditions; the fee allows the lienholder to recoup some of its costs of selling the vehicle to satisfy the lien for unpaid towing and service charges. The fee is imposed at the lienholder's election; absent inclusion of the fee, there is no reason the lienholder cannot move forward with its lien sale. Concededly, tow companies may eventually recoup the "prices" they charge for towing and storage services through lien sales, but section 22851.12 does not regulate the lien sale itself, it only imposes limitations and conditions on the lienholder's ability to recoup costs associated with preparing for the lien sale.

In *Mendonca, supra,* 152 F.3d 1184, the Ninth Circuit undertook to decide whether California's Prevailing Wage Law (the CPWL) was preempted by the FAAAA's general preemption provision. The plaintiff, a group of public works trucking contractors, argued that the FAAAA preempted the CPWL because it "increases its prices by 25 [percent], causes it to utilize independent owner-operators, and compels it to re-direct and re-route equipment to compensate for lost revenue." (*Mendonca,* 152 F.3d at p. 1189.) It sought to show its rates for "services" were based on costs, performance factors and conditions including prevailing wage requirements. (*Ibid.*)

The court rejected these arguments. In doing so, it reviewed the legislative history of the FAAAA. It explained Congress believed that across-the-board deregulation was necessary to eliminate nonuniform state regulations of motor carriers which had caused " 'significant inefficiencies, increased costs, reduction of competition, inhibition of innovation and technology, and cur-tail[ed] the expansion of markets.' " (*Mendonca, supra,* 152 F.3d at p. 1187, citing H.R. Rep. No. 103-677, 2d Sess., pp. 86–88 (1994), reprinted in 1994 U.S. Code Cong. & Admin. News, pp. 1715, 1758–60.) The court also reviewed United States Supreme Court cases involving the preemptive scope of the Airline Deregulation Act of 1978 and Employee Retirement Income Security Act (ERISA), which have similar preemption clauses directed to whether particular laws "relate to" those federal acts. (*Mendonca,* at pp. 1187–1189 & fn. 4.) Against his background, the court found that although the prevailing wage law was "in a certain sense . . . 'related to' [plaintiff's] prices, routes, and services," its effect was no more than indirect, remote and tenuous, and it did not frustrate the purpose of deregulation by

*acutely* interfering with the forces of competition. (*Id.* at p. 1189.) Nor did the CPWL fall into the category of the field of laws regulating prices, routes, or services. Accordingly, the court found the CPWL not related to the plaintiff's prices, routes, and services within the meaning of the FAAAA. (*Mendonca,* at p. 1189.)

In our view, the regulations of section 22851.12 have just as remote a relationship to a tow company's price, route or service as the CPWL in *Mendonca.* To the extent the lien sale preparation fee regulations have an effect on the "price" of a tow company's towing services or storage, it is only by virtue of reimbursing the tow company for costs of the sale that allows it to ultimately recover its fees. A tow company's ability to recoup its costs in conducting lien sales does not have a direct effect or influence on the prices charged by the tow company for either towing or storage, nor do these regulations place conditions or limitations on the lien sale. Any effect on price therefore is only indirect and tenuous. Under the circumstances, we conclude the lien sale preparation fee regulation does not fall within the purview of the FAAAA's general preemption provision.

Defendant seeks to distinguish *Mendonca,* claiming the court's heavy reliance on *California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.* (1997) 519 U.S. 316 [136 L.Ed.2d 791, 117 S.Ct. 832], involving an ERISA preemption challenge to CPWL, is "inapplicable" here because the law at issue in that case, ERISA, contains "no indication whatsoever that Congress intended to preempt state laws." We are not persuaded. First, *Mendonca*'s analysis does not rely solely on *Dillingham.* (*Mendonca, supra,* 152 F.3d at p. 1188, citing *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.* (1995) 514 U.S. 645, 668 [131 L.Ed.2d 695, 115 S.Ct. 1671].) Second, defendant is simply wrong about ERISA, which as the *Dillingham* court observed contains a preemption clause providing that ERISA " 'shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.' " (*Dillingham, supra,* 519 U.S. at p. 322, fn. 3, quoting 29 U.S.C. § 1144(a).)

Defendant further argues that regulations affecting lien sales have a "direct effect on a towing company's *business.*" (Italics added.) This analysis is mis placed. The FAAAA only preempts state laws relating to a tow company's price, route or service, and we have already concluded that any possible relation of section 22851.12 is simply too indirect to satisfy this criteria.

## DISPOSITION

The judgment is reversed and the matter remanded with directions that the trial court enter a new order overruling defendant's demurrer. Plaintiff shall recover its costs on appeal.

Huffman, Acting P. J., and McIntyre, J., concurred.