Filed 8/15/14  Smith v. Cate CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| GREGORY SMITH,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>MATTHEW CATE et al.,<br><br>    Defendants and Respondents. | D063577<br><br><br><br>(Super. Ct. No.<br> 37-2012-00092175-CU-PN-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Randa Trapp, Judge. Affirmed.

Gregory Smith, in pro. per., for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Jonathan L. Wolff, Senior Assistant Attorney General, Misha D. Igra and Terrence F. Sheehy, Deputy Attorneys General, for Defendant and Respondent.

# I.

## INTRODUCTION

Plaintiff Gregory Smith appeals from a judgment entered in favor of defendants Matthew Cate, A. Clark, J. Carey, E. Solis, S. Daraglou, and R. Perez,[1] after the court sustained the defendants' demurrers to Smith's complaint, without leave to amend, on the ground that Smith had failed to exhaust his administrative remedies prior to filing suit. Smith sued the defendants for negligence after he was attacked and injured by a fellow inmate while incarcerated in state prison. We affirm the judgment.

# II.

## FACTUAL AND PROCEDURAL BACKGROUND

Smith is an inmate in the custody of the California Department of Corrections and Rehabilitation (CDCR) at the Richard J. Donovan Correctional Facility. Defendant Cate is the former Secretary of the CDCR; defendant Daraglou is a clinical psychologist who worked at the prison; defendant Perez was a correctional sergeant at the prison at the time of the alleged injuries; and defendants Solis, Clark and Carey were correctional officers at the time of the alleged injuries.

Smith alleges in his complaint that the defendants' negligence resulted in an assault on Smith by another inmate. According to Smith, the defendants breached their

---

[1]     The majority of the defendants' full names are not provided in the documents in the record.

duty of care by failing to exercise reasonable care in deciding to house Smith with inmate Anthony Graham.

Daraglou treated Smith. Smith alleges that prior to Smith being placed in a cell with Graham, Daraglou had been warned about Graham's "bizarre behavior in the cell." According to Smith, Graham had had a "problem" with a prior cellmate.

In late September 2010, Graham came back to the cell "after a short day of yard, [and had] some sort of sexual fanta[sies] and immorality expectation." Graham ignored Smith's requests to stop his provocative behavior. Graham and Smith had some sort of altercation in the cell. As a result of the altercation, Smith suffered second-degree burns, damage to his left eye, a broken left shoulder, two puncture wounds, and also suffered mental and psychological trauma. He was hospitalized for 10 days at the University of California San Diego burn unit.

Smith alleged that he exhausted his administrative remedies and complied with the applicable claims statutes.

All of the defendants except Cate, who had not yet been served, demurred to Smith's complaint on the grounds that Smith had in fact failed to exhaust the available prison administrative remedies and failed to comply with the Government Claims Act (Gov. Code, § 810 et seq.). Smith opposed the demurrer, arguing that he had been unable to exhaust his inmate appeal because his appeal had not been returned to him and/or because his appeal had been returned to him on the ground that he had to seek an

informal level review, which Smith believed was "an error." The trial court sustained the demurrer without leave to amend.

Defendant Cate was subsequently served, and demurred on the same grounds. Smith did not oppose Cate's demurrer. The trial court sustained Cate's demurrer without leave to amend, as well.

Smith filed a timely notice of appeal.

III.

DISCUSSION

A.    *Legal standards*

We review de novo an order sustaining a demurrer to determine whether the complaint alleges facts sufficient to state a cause of action. (*CPF Agency Corp. v. Sevel's 24 Hour Towing Service* (2005) 132 Cal.App.4th 1034, 1042.) We exercise our independent judgment as to whether the complaint states a cause of action. (*Palestini v. General Dynamics Corp.* (2002) 99 Cal.App.4th 80, 86.) " 'A judgment of dismissal after a demurrer has been sustained without leave to amend will be affirmed if proper on any grounds stated in the demurrer, whether or not the court acted on that ground.' [Citation.]" (*Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1153.)

When a demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of

discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

B.      *Analysis*

The general rule of administrative exhaustion requires that "where an adequate administrative remedy is provided by statute, resort to that forum is a 'jurisdictional' prerequisite to judicial consideration of the claim." (*Styne v. Stevens* (2001) 26 Cal.4th 42, 56.) Thus, "[i]n the context of administrative proceedings, a controversy is not ripe for adjudication until the administrative process is completed and the agency makes a final decision that results in a direct and immediate impact on the parties." (*Santa Barbara County Flower & Nursery Growers Assn., Inc. v. County of Santa Barbara* (2004) 121 Cal.App.4th 864, 875.)

The defendants contend that Smith failed to pursue and exhaust *two* available administrative remedies before he filed suit—the Government Claims Act and all levels of the California CDCR's administrative procedures.

1.      *The trial court properly sustained the defendants' demurrers*

a.      *Government Claims Act requirements*

The defendants point out that a lawsuit that seeks monetary damages from a public employee alleging an injury caused by an act or omission in the course of public employment must be preceded by the presentation of a claim to the public entity and action on the claim by the Claims Board. (Gov. Code, § 911.2; *Briggs v. Lawrence* (1991) 230 Cal.App.3d 605, 612.) A plaintiff must allege, as an element of his or her

5

claim against the public employee, that the claim has been presented to the public entity. (*Shirk v. Vista Unified School Dist.* (2007) 42 Cal.4th 201, 209.) Presentation of the claim and a Claims Board action on or rejection of the claim are conditions precedent to suit. (*State of California v. Superior Court* (2004) 32 Cal.4th 1234, 1245.)

In this case, the trial court took judicial notice of public agency records demonstrating that the Claims Board did not accept Smith's claim form because he failed to either pay the requisite filing fee or obtain a waiver of the fee. A court may take judicial notice of the official records of a state agency. (*California State Employees' Assn. v. Flournoy* (1973) 32 Cal.App.3d 219, 233, fn. 10 (*Flournoy*).) The official record of a writing is prima facie evidence of the existence and content of the original recorded writing if the record is in fact a record of an office of a public entity and a statute authorized the writing to be recorded in that office. (Evid. Code, § 1532, subd. (a).) In addition, a court may take judicial notice of facts that are "[o]fficial acts of the legislative, executive, and judicial departments of the United States and of any state of the United States." (Evid. Code, § 452, subd. (c).) The Claims Board is a subdivision of the executive branch of California, and its receipt, rejection, or acceptance of claims as required by the Government Claims Act are official acts subject to judicial notice. (See *Fowler v. Howell* (1996) 42 Cal.App.4th 1746, 1752-1753 [court took judicial notice of records of State Board of Control and the declaration of a state employee regarding those records to determine that plaintiff had not complied with the Government Claims Act].)

6

Smith argues in his briefing on appeal that he responded to the Claims Board's "rejection" of his claim by filing an affidavit for a waiver of the filing fee. The record indicates that Smith submitted to the trial court a copy of a fee waiver form that was nearly completely blank and contained no information from which the Claims Board could assess whether Smith qualified for a waiver of the filing fee, and did not include a certified copy of his trust account balance, which would have provided such information. Smith also attached to his opposition to the first demurrer a copy of a request he had made for a certified copy of his trust account balance. It is unclear from the record on appeal what happened to Smith's request for a certified copy of his trust account. Smith contended at oral argument that he never received notification from the Claims Board that his claim was incomplete for lack of a sufficient fee waiver request, and that he never received notification that his correctional counselor had received a copy of the certified trust account statement. However, the record does not provide this court with sufficient information to determine that anyone other than Smith bears even partial responsibility for Smith's failure to demonstrate that he qualified for a waiver of the filing fee. Specifically, nothing that Smith provided to the trial court or included in the record on appeal demonstrates that he sufficiently satisfied the requirement that he present his claim to the Claims Board in a manner that would allow the Claims Board to either act on the claim or reject it.

Given the state of the record, the trial court properly determined that Smith failed to establish that he satisfied the requirements of the Government Claims Act, and on this basis, the trial court properly sustained the defendants' demurrers to the complaint.

b. *Regulations governing administrative proceedings regarding inmate grievances*

Smith was also obligated to exhaust the administrative remedies available to prisoners, which is an obligation independent of the obligation to comply with the Government Claims Act. (See *Parthemore v. Col* (2013) 221 Cal.App.4th 1372, 1382.)

Prior to bringing a lawsuit, California inmates must exhaust their administrative remedies pursuant to Code of Regulations, title 15, section 3084 et seq. (*Wright v. State of California* (2004) 122 Cal.App.4th 659, 667 (*Wright*).) Specifically, an inmate must "appeal any departmental decision, action, condition, or policy which [an inmate] can demonstrate as having an adverse effect upon [his or her] welfare." (Cal. Code Regs., tit. 15, § 3084.1 (Reg. 2010, No. 51).)

At the time of the events that Smith alleges in his complaint, the regulatory process imposed by the Code of Regulations required an inmate to (1) prepare an Inmate/Parolee Appeal Form, present it to the involved prison official, and attempt an informal resolution; (2) if the matter is not informally resolved, file for and receive a first formal level decision; (3) if the requested relief is not granted at the first formal level decision, file for and receive a second formal level decision; and (4) if relief is not granted at the second level, file for and receive a third level decision from the Director of

8

Corrections. (Cal. Code Regs., tit. 15, § 3084.5 (Reg. 2010, No. 51).) An inmate must complete this entire process in order to be considered to have exhausted his or her administrative remedies. (*Wright*, *supra*, 122 Cal.App.4th at p. 667.)

The defendants presented the trial court with the records of the CDCR regarding Smith's inmate appeal. Among the records presented are the declarations of R. Cobb, Appeals Coordinator at Richard J. Donovan Correctional Facility, and J. D. Lozano, the Chief of the CDCR Office of Appeals. These records are properly the subject of judicial notice, as official records of a state agency. (See *Flournoy*, *supra*, 32 Cal.App.3d at p. 233, fn. 10; Evid. Code, § 1532, subd. (a).)

These records demonstrate that Smith failed to submit an inmate appeal at the first or second levels of review regarding his contention that the defendants acted negligently with respect to inmate Graham's attack on Smith. Instead, Smith attempted to bypass the initial two levels of review by proceeding directly to the third level of review. The records also establish that Smith was informed of the particular defects of his appeal, including that he failed to utilize the first and second levels of appeal. Smith's grievance was screened for failure to proceed properly, based on his failure to submit his inmate appeal at the first or second levels of review, as required by the governing regulations. (See Cal. Code Regs., tit. 15 § 3084.6, subd. (b)(15) (Reg. 2011, No. 30) [providing that an inmate appeal may be rejected for, among other things, submitting the appeal "for processing at an inappropriate level bypassing required lower level(s) of review"].)

9

On appeal, Smith contends that he was prevented from exhausting his inmate appeal, arguing that he gave his inmate appeal form to "Counselor Sharp," that the appeal was not returned to him, and that "Appeal Coordinator Cobb" erroneously screened the inmate appeal back to Smith for an informal level review. According to Smith, this constitutes an "adverse" decision that demonstrates sufficient exhaustion of his appeal.

If Smith believed that his appeal was not being properly considered, he was required to petition for a "writ of mandate ordering the Department to perform its duty by completing the review." (*Wright, supra*, 122 Cal.App.4th at p. 667.) Under *Wright*, an inmate's "substantial compliance" with the inmate review process is insufficient to meet the exhaustion of administrative remedies requirement. (*Ibid*.) There is no evidence in the record to demonstrate that Smith filed a petition for a writ of mandate in order to ensure that his appeal was processed appropriately by correctional facility staff.

Smith relies on *Sabatasso v. Superior Court* (2008) 167 Cal.App.4th 791 in support of his contention that he sufficiently exhausted his administrative remedies. However, in *Sabatasso*, the court concluded that there may be an exception to the administrative exhaustion requirement in a situation in which an inmate could demonstrate that the Department would not grant the relief requested by the inmate because doing so would cause the Department to violate its own regulation. (*Id.* at p. 795.) There has been no such showing here. Smith failed to give the Department the opportunity to provide him with some or all of the relief that he was requesting, or to reject his claim at all levels of review.

2. *Smith has not demonstrated that he could cure the deficiencies of the complaint by amendment*

Because the trial court sustained the defendants' demurrers without leave to amend, we must now "decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan*, *supra*, 39 Cal.3d at p. 318.)

Smith has not offered any argument on appeal as to how he could cure the defects of his complaint. Smith was required to exhaust his administrative remedies prior to bringing suit, and he failed to do so. We see no method by which Smith can cure this jurisdictional defect. Therefore, the trial court properly sustained the demurrers without leave to amend.

## IV.

## DISPOSITION

The judgment of the trial court is affirmed.

                                                                 
AARON, J.

WE CONCUR:

          McCONNELL, P. J.

          O'ROURKE, J.